## MARIE WHITLOCK

*v.*

## STANLEY GREACEN.

· The statute of 1870, giving the court of chancery jurisdiction to settle the title to lands in certain cases, does not give authority to settle the title to an incorporeal hereditament claimed by the complainant to exist in lands held in possession by the defendant.

, On demurrer.

*Mr. Robert H. McCarter*, for the demurrant.

*Mr. Edward A. Day*, for the complainant.

VAN FLEET, V. C.

The main object of the suit in this case is to procure a decree settling the complainant's title to an incorporeal hereditament. The bill is filed under the statute of 1870, authorizing this court in certain cases to settle the title to lands.   *Rev. p. 1189.*   The complainant owns a tract of land lying adjacent to a tract owned by the defendant.   Both tracts lie adjacent to the Morris canal. There is a mill on the complainant's tract which is in part operated by water power.   The water so used by the complainant is obtained from the canal, and is carried from the canal by a race-way across the lands of the defendant.   The complainant claims a right to have water flow from the canal across the lands of the defendant to her mill, and avers that she is in peaceable possession of such right, claiming to own the same, and that the defendant denies her title thereto, and that no suit is pending to enforce or test the validity of such denial; she, therefore, asks that her title to such right may be settled by the decree of this court.   It is thus seen that the subject-matter of this suit is the right of the complainant to an easement in the lands of the defendant.   The defendant has demurred, specifying several

grounds. The principal one is, that the right which the complainant has attempted to put in course of judicial determination is not within the protection of the statute of 1870, and cannot, therefore, be made the subject of a suit under that statute.

The proposition on which the demurrer rests is this: that the statute of 1870 comprehends lands alone; in other words, that it provides a means for settling, in certain cases, the title to corporeal hereditaments, as distinguished from incorporeal hereditaments, but makes no provision for settling the title to incorporeal hereditaments. The word hereditaments embraces everything that may be inherited, be it corporeal or incorporeal. The difference, however, between a corporeal and an incorporeal hereditament is wide and vital. Says Blackstone:

"Corporeal hereditaments are the substance, which may be always seen, always handled; incorporeal hereditaments are but a sort of accidents, which inhere in and are supported by that substance. * * * Their existence is merely in idea and abstracted contemplation, though their effects and profits may be frequently objects of our bodily senses." *2 Bl. Com. 19.*

And Kent says:

"Corporeal hereditaments are confined to land * * * and that incorporeal hereditaments comprise certain inheritable rights, which are not, strictly speaking, of a corporeal nature, or land, although they are, by their own nature, or use, annexed to corporeal inheritances, and are rights issuing out of them or concern them." *3 Kent's Com. § 402, marg.*

The word land has in law a well-settled meaning. It includes the surface of the ground and everything that is on it and under it, but does not comprehend incorporeal hereditaments. Under a charter giving a corporation power to take land, by the exercise of the right of eminent domain, it has been repeatedly held, here and elsewhere, that a mere incorporeal hereditament could not be taken, and that this was so because land, according to its well-settled legal signification, was not broad enough to comprehend an incorporeal hereditament, but simply embraced things corporeal. *Watson* v. *Acquackanock Water Co., 7 Vr. 195; De Camp* v *Hibernia R. R. Co., 18 Vr. 43.*

Whitlock v. Greacen.

The main design of the statute of 1870 was to provide a means by which disputes respecting the title to lands might, in certain cases, be put in course of judicial determination, in order that all doubts concerning the same might be removed, so that the real owner of the lands might have the full benefit of his ownership. The only thing the law-making power meant to protect was the title to lands. This is plainly declared by almost every section of the statute. By the first section it is enacted, that when any person is in the peaceable possession of lands, claiming to own the same, and his title thereto is denied or disputed, or any other person claims, or is reputed to claim, to own the same, or to hold any encumbrance thereon, and no suit shall be pending to enforce or test the validity of such claim, it shall be lawful for such person, so in possession, to maintain a suit in the court of chancery to settle the title to the lands and to clear up all doubts and disputes concerning the same. The same section then declares that the bill in such suit shall describe the lands with certainty, and shall name the person who claims, or is reputed to claim, such hostile title or lien, and shall call upon him to set forth his title or lien, and how and by what instrument the same was created. The second section directs, that with the subpoena in such suit a ticket shall be issued describing the lands with precision, stating the object of the suit, and likewise notifying the defendant that if he claims any title to or lien on the lands he must answer the bill, but not otherwise. The third section provides, among other things, that if the defendant suffers a decree *pro confesso* to be taken against him, or files an answer disclaiming, the court shall, without further proof, decree that the defendant has no title to or lien on the lands. By the fourth section it is enacted, that if the defendant claims any estate in or lien on the lands, whether his claim embraces the whole or only a part, he shall, by his answer, set forth the nature and extent of his claim, and the manner in which he claims to have derived the same. The fifth and sixth sections prescribe the methods by which the issues made up in such a suit shall be tried, what judgment shall be pronounced, and what shall be its effect on the rights of the parties in the lands.

Whitlock *v.* Greacen.

From this synopsis, I think it very clearly appears that the only thing which comes within either the words or spirit of the statute is the title to lands, or the title to corporeal hereditaments. Its very first provision, it will be observed, prescribes the qualifications of a suitor under it—he must have the peaceable possession of lands, under a claim of ownership, to which an adverse right or claim is asserted, or is reputed to exist. No one but a suitor possessing these qualifications, or a suitor thus situated, can maintain an action under this statute. This court so decided in *Southmayd* v. *City of Elizabeth,* and its decision was approved by the court of errors and appeals. *2 Stew. Eq. 203* and *650.* That the complainant is in the peaceable possession of the lands to which he asks to have his title settled is a jurisdictional fact, which he must not only aver, but, in case of contest, must prove, or his bill must be dismissed. *Nixon* v. *Walter, 14 Stew Eq. 103, 104.* As it is a jurisdictional fact, it must be established before the court can proceed to try the question of title, for until it is established it is unknown whether or not the court has authority to decide the question of title. In the language of Vice-Chancellor Pitney, in *Beale* v. *Blake, 18 Stew. Eq. 668, 669,* " the defendant has a right to have this preliminary issue determined before he is called upon to produce evidence in support of his title, since, if the complainant cannot prove himself in peaceable possession, he has no right under the statute, or otherwise, to call on the defendant to prove his title." The defendant, in an action brought under this statute, can, of course, only defend on the ground that he has a title to or lien on the land, the title to which the complainant asks to have cleared up and freed from doubt. This is the reason why the complainant is required to describe the land in his bill, and in the ticket accompanying the subpœna, with certainty and precision. He must point out the land to the defendant so that he may have a fair opportunity to decide whether he will defend or not. And if the defendant concludes to defend, the fourth section of the statute requires him to set forth in his answer, plainly and distinctly, just what claim he makes. But he can only defend on the ground that he has an estate or interest in

·or a lien on the land, or some part of it which the complainant
has in his possession.

Now, whether the complainant claims to hold the easement in
question as a right in gross, or as a thing appurtenant to the
land of which her mill constitutes a part, does not very clearly
appear; but if it be conceded that the averments of the bill
·show that the easement is appurtenant to the complainant's land,
·still it is obvious that it is a thing which, as a matter of law, is
·incapable of being held in possession in the sense in which that
·word is used in this statute. As there used, it obviously means
the occupation of and the exercise of dominion over a thing of
·substance which may be seen and touched, and not the mere
exercise of a privilege which is without substance and impalp-
able. Possession of the land to which the easement is appur-
tenant does not give the complainant possession of the easement.
That is a thing which she may enjoy, but cannot possess as lands
are possessed. If the easement exists at all, it exists in the
lands of the defendant; he is in the exclusive possession of that,
and rightfully. The complainant makes no claim of a right to
go on the land of the defendant; her claim, stated in its broadest
form, is merely of a right to have water flow from the Morris
canal across the defendant's land to her mill. Such right is not,
in my judgment, within the protection of the statute, whether
regard be had simply to its language or to its general design or
policy. The design of the statute must, I think, be considered
authoritatively settled. The chief-justice, in speaking of it, in
pronouncing the opinion of the court of errors and appeals in
*Jersey City* v. *Lembech*, said: " The inequity that was designed
to be remedied grew out of the situation of a person in the pos-
session of lands as owner, in which land another person claimed
an interest which he would not enforce, and the hardship was,.
that the person so in possession could not force his adversary
to sue, and thus put the claim to the test." And then, in illus-
trating the class of cases to which the remedy given by the stat-
ute applied, he said: " I would instance, as a sample, the case
of a doubtful claim upon land arising under a will, a person who
asserts an absolute title being in possession. In this situation

the existence of such claim, no matter how inauthentic or unsub-stantial, would work, oftentimes, a serious injury to such real owner, and, without statutory help, the latter might not, in all cases, be able to clear his title. In such a conjecture the present act would operate favorably, and, in such connection, would be in harmony with legal and constitutional principles." *4 Stew. Eq. 255, 272, 273.* It is clear, from all points of view, that the statute was not intended to furnish a means by which the title to an incorporeal hereditament might be settled, except in lands held in peaceable possession by the complainant, the title to which the complainant asks to have freed from doubt. Were the positions of the parties to this suit reversed, so that the defendant was the party asking for an adjudication as to whether the easement in question existed or not, I have no doubt the court would have jurisdiction, for then, it will be observed, the question would be, whether he held title to lands, which were in his peaceable possession, free from or subject to the easement claimed.

On the argument, an attempt was made to uphold the bill as a bill to relieve the complainant from the consequences of a for-feiture, but, viewing the bill in that aspect, there can be no doubt that it is fatally defective in more than one essential point.

The demurrer must be sustained, with costs.